**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| United States of America ex rel. | ) | |
| RICHARD CLARK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | CASE NO. 06 C 5920 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| TERRY POLK, Warden | ) | |
| Jacksonville Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Richard Clark ("Clark"), an Illinois state prisoner, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [1, 23]. For the following reasons, his petition for a writ of habeas corpus is denied.

**I.     Background**

Because Petitioner does not present clear and convincing evidence challenging the statement of facts set forth in the Illinois Appellate Court's decision on direct appeal, the Court presumes that those facts are correct for purposes of its habeas review.  See 28 U.S.C. § 2254(e)(1); *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007).  The Court therefore adopts the following account from the Illinois Appellate Court's Rule 23 Order on direct appeal affirming the judgment of the Circuit Court of Cook County.

**A.     Factual Background**

Following a 2001 jury trial, Clark was convicted of theft by deception and sentenced to fourteen years imprisonment to be served consecutively to a seven-year sentence that Clark

received in a separate case. Ans., Ex. A[1] (Rule 23 Order) at 1. Clark's conviction arose from a "pigeon drop" scheme through which Clark and an accomplice stole $5,000 from Wilborn Carlos ("Carlos"), a 75 year-old associate minister. *Id.* at 2. Carlos testified that on July 23, 1997, he encountered a man with an African accent, whom he later identified as Clark, while exiting Creative Mirror in Evergreen Park. *Id.* Clark requested Carlos' help in locating the African Methodist Church, saying that he had something to give to the church. *Id.* During that exchange, a stranger approached and offered to help the men find the church, suggesting that they go to the post office to obtain directions. *Id.* Carlos drove the two men to the post office, where the stranger entered the building and then exited it after failing to obtain any information about the church's location. *Id.*

Afterwards, Clark told Carlos that Clark's relative was killed in a plane crash and that he had collected $150,000 in the settlement. *Id.* Clark said that he spent $50,000 to pay his attorney and he wanted to donate the remaining $100,000 to charity because he could not keep it for himself. *Id.* at 3. He told Carlos that he was from Africa and needed to return there, but if he did so with the money, he and his family would be killed. Clark then showed Carlos an envelope containing some money, allegedly $100,000 and a letter from the "airplane company" regarding the settlement. *Id.*

Clark then told Carlos that he wanted Carlos to take the money and donate it to a charity, but before he would give the money to Carlos, he needed to prove that he was an honest man. *Id.* In order to do so, Clark requested that Carlos withdraw funds from his own account and add them to the envelope, which Carlos agreed to do. *Id.* The stranger also agreed to withdraw a similar amount of money, returning from the bank with an envelope with $6,000 written on it.

---

[1] For ease of reference, the Court will refer to the state court materials that accompanied Respondent's Answer (as required by Rule 5(d) Governing Section 2254 Habeas Cases) by their exhibit designation.

*Id.* The three men then proceeded to Carlos' bank which was closed. *Id.* The stranger then mentioned that there was another branch of the bank that was open that day and Carlos drove to that location. *Id.* Clark told Carlos to withdraw fifty $100 bills. Carlos entered the bank and wrote out a check to cash, dated July 23, 1997, for $5,000. *Id.* at 4. Carlos cashed the check and received an envelope containing $5,000. *Id.* Carlos then drove the two men to the location where they first met. *Id.* They combined all of the money into a blue handkerchief. *Id.* The stranger then recommended that the three men pray over the money. *Id.* Carlos closed his eyes and the three men proceeded to pray over the handkerchief. *Id.* Thereafter, Clark gave Carlos the envelope in the blue handkerchief and left, telling Carlos he was returning to Africa and needed to catch a flight at O'Hare. *Id.*

Carlos drove back to the bank to redeposit the money. *Id.* When Carlos retrieved the blue handkerchief from the trunk of the car he discovered that it only contained scraps of paper cut into strips and no money. *Id.* Carlos returned to the place where he initially met Clark and the stranger but there was no trace of either man. *Id.* Carlos then went immediately to the Evergreen Park Police Department to fill out a report. *Id.* Detective Daniel Envoy ("Envoy"), of the Evergreen Park Police Department, testified that he met Carlos on July 23, 1997, when Carlos came in to report the incident. Envoy testified that the next day, Carlos returned to the Evergreen Park Police Department and asked him to examine Carlos' vehicle for fingerprints that Clark may have left behind. *Id.* at 4-5. A print was successfully lifted from the right rear door of Carlos' vehicle and submitted to the State Police Crime Lab. *Id.* Analysis of the fingerprint identified it as belonging to Richard Clark. *Id.* Subsequently, Envoy obtained a photograph of Clark and placed it in a photo line-up to be presented to Carlos, who immediately identified the photo of Clark. *Id.*

### B. Procedural History

Clark was tried and convicted of theft by deception on March 24, 1999. *Id.* at 1. Clark was sentenced to fourteen years imprisonment, to run consecutively to a seven-year sentence imposed in a separate case. *Id.* On April 19, 1999, Assistant Public Defender Darlene Williams filed a post-trial motion alleging that several errors had occurred during trial. *Id.* at 5-6. On that day, Clark indicated to the court that he no longer wished to be represented by Williams, as he believed that he had received ineffective assistance of counsel. *Id.* at 6. Clark also indicated that he had filed a complaint with the Attorney Registration and Disciplinary Commission ("ARDC"), alleging that Williams sabotaged his defense. *Id.* The trial court granted Williams' request for leave to withdraw and stated that a member of the private bar would be appointed to represent Clark on the next court date in order to avoid a conflict of interest as a result of the ARDC complaint. *Id.* However, on the next court date, after reviewing the relevant case law regarding conflicts of interest between a public defender and a defendant, the trial court ordered Williams' supervisor to appoint another public defender from outside the district to represent Clark. *Id.* Assistant Public Defender Deborah Niesen was appointed to represent Clark in post-trial proceedings. *Id.*

On direct appeal, Clark argued that defense counsel had provided ineffective assistance of counsel for failing to fulfill the promise she made in her opening statement that she would present evidence, in the form of Carlos' bank records, and testimony from an employee of the bank that the victim withdrew the money a day after he reported the incident to the police. *Id.* at 6-7. The Illinois Appellate Court found that Clark had misrepresented defense counsel's opening statement and that the defense counsel did not tell the jury that the "bank lady" would prove that Carlos was lying or would testify that the check was cashed on July 24, 1997. *Id.* at 7-8. The

Appellate Court held that Clark had failed to prove that defense counsel's failure to call the bank employee to testify and failure to introduce evidence was not sound trial strategy and outside the range of reasonable professional assistance. *Id.* at 8-10. The Appellate Court further held that Clark failed to show that he was prejudiced by these decisions as required by the *Strickland* standard. *Id.* On May 2, 2002, the Appellate Court affirmed Clark's conviction and sentence. *Id.* at 15. Clark filed a petition for rehearing, which was denied on May 31, 2002. Ex. E (PLA) at 2.

Clark then filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court claiming that he was wrongly convicted of theft by deception because both the trial court and the Appellate Court confused deception creating an opportunity for theft with the distinct offense of theft by deception, given that the State never alleged and no evidence hinted that Clark induced Carlos to hand over money to him. *Id.* at 3. Clark did not raise the ineffective assistance of counsel claim. *Id.* On October 24, 2002, the Illinois Supreme Court denied the PLA. Ex. F (Order) at 1.

Clark filed a petition for post-conviction relief on August 6, 2003 claiming that (1) trial counsel was ineffective for failing to impeach Carlos' testimony, failing to introduce evidence, and failing to argue this issue in his motion for a new trial; and (2) he was denied due process by the State's failure to disclose favorable evidence and by the prosecution's knowing use of perjured testimony. Ex. G at 2. In three subsequent filings, he also raised issues relating to his sentence, including an *Apprendi* violation. See Amended petition for post-conviction relief, Ex. H; Supplement to petition for post-conviction relief, Ex. I; Revised supplement to petition for post-conviction, Ex. J. The State moved to dismiss the petition, arguing that Clark's claims were meritless or barred by the doctrines of waiver or res judicata. Ex. K at 2. On August 24, 2004,

the Circuit Court dismissed the petition, finding that there were no constitutional issues raised in the post-conviction petition that had not been previously addressed and decided by the courts that would justify the relief sought by Clark. Ex. M (Trans.) at 38.

Clark appealed the Circuit Court's dismissal order, arguing (among other things) that his trial counsel was ineffective for failing to impeach Carlos' testimony with the police report compiled on the day of the incident. Ex. N (Pet. PC Br.) at 2. Clark filed a motion for leave to file a *pro se* supplemental brief to raise the additional claims of (1) ineffective assistance of trial counsel for failure to introduce exculpatory bank records; and (2) violation of his right to due process by allowing the State to use perjured testimony to obtain Clark's conviction. Ex. O (Motion for Leave to File *pro se* Supp.). Clark's motion was denied by the Illinois Appellate Court, First District, on February 8, 2006. Ex. Q (Order denying leave) at 1. On May 31, 2006, the Illinois Appellate Court affirmed the Circuit Court's dismissal of Clark's post-conviction petition. Ex. R (*People v. Clark*, No. 1-05-0076, (Ill. App. Ct. May 31, 2006)) at 15. The Appellate Court held that Clark's claim of ineffective assistance of trial counsel was forfeited because it could have been raised on direct appeal but was not. *Id.* at 9. Furthermore, the Appellate Court found that the ineffective assistance claim would have failed on the merits because Clark did not establish that he had suffered any prejudice as a result of trial counsel's actions, as required by the *Strickland* standard. *Id.* at 9-11.

Clark filed a *pro se* PLA to the Illinois Supreme Court renewing his claim of ineffective assistance of trial counsel for failure to introduce exculpatory evidence regarding Carlos' bank records, failing to contest the State's use of perjured testimony, and failing to impeach Carlos' testimony. Ex. S (PLA) at 7. Clark also argued that he was denied the effective assistance of post-trial counsel and appellate counsel and that the State's closing arguments at trial were

improper and deceptive.  *Id.*  at 6-10.  On September 27, 2006, the Supreme Court of Illinois denied the PLA.  Ex. T (Order) at 1.

On October 31, 2006, Clark filed a petition for a writ of habeas corpus.  Clark's initial petition claimed that (1) the state court's dismissal of Clark's ineffective assistance of trial counsel claim for failure to impeach Carlos' testimony as inconsistent, was based on an unreasonable application of *Strickland v. Washington* and an unreasonable determination of the facts; (2) the state court's dismissal of Clark's ineffective assistance of trial counsel claim for failure to introduce exculpatory evidence regarding Carlos' bank records was based on an unreasonable application of *Strickland v. Washington* and an unreasonable determination of the facts; and (3) the state court's dismissal of Clark's claim that the prosecution had knowingly used perjured testimony in his case was based on an unreasonable application of *Giglio v. United States* and an unreasonable determination of the facts.  Pet. [1] at 5-6.  In his answer to Clark's petition, Respondent contended that Petitioner's ineffective assistance of trial counsel claim based upon a failure to introduce exculpatory evidence and his claim that the prosecution knowingly used perjured testimony at trial were procedurally defaulted for failure to exhaust, and that Petitioner's ineffective assistance of counsel claim based upon a failure to impeach also was procedurally defaulted on independent and adequate state law grounds.  [17].

On October 10, 2007, with leave of court, Clark filed an amended petition for writ of habeas corpus adding an additional claim that his consecutive sentences violate *Apprendi v. New Jersey*, incorporating by reference an earlier brief for leave to amend his petition.  Am. Pet. [23]; Leave to Amend [21], at 2-3.  Respondent answered Clark's amended petition, contending that Petitioner's claim does not fall within the ambit of *Apprendi*.  [25].

## II.     Standard of Review

### A.     Federal Habeas Relief for State Prisoners

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a habeas petition cannot be granted unless the decision of the state court "was contrary to, or involved an unreasonable application of clearly established Federal law," or "was based on an unreasonable determination of the facts."  28 U.S.C. §2254(d)(1-2) (2000).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law; [or] if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the United States Supreme Court]."  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state court's decision constitutes an "unreasonable application" of clearly established federal law if the state court identified the correct legal rule but unreasonably applied the controlling law to the facts of the case.  *Williams*, 529 U.S. at 407.  It should be noted that "an unreasonable application of federal law is different from an *incorrect* application of federal law."  *Id.* at 410.  "[U]nreasonable" means that a state court's decision lies "well outside the boundaries of permissible differences of opinion."  *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

### B.     The Exhaustion Doctrine

Before filing a habeas petition in federal court, a petitioner must have "fully and fairly presented his claims to the state appellate courts, thus giving the state courts a meaningful

opportunity to consider the substance of the claims that he later presents in his federal challenge." *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005); see also *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This exhaustion requirement "serves an interest in federal-state comity by giving state courts the first opportunity to address and correct potential violations of a prisoner's federal rights." *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1972)). It requires the petitioner to assert each of his or her federal claims through one complete round of state-court review, either on direct appeal of his or her conviction or in post-conviction proceedings, before seeking relief in federal court. See *O'Sullivan,* 526 U.S. at 845 (concluding state prisoners must give the state court a full and fair opportunity to resolve federal constitutional claims by invoking those claims in "one complete round of the State's established appellate review process"); see also *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). This includes presentation of the claims to appellate courts where review is discretionary when that review is part of the ordinary appellate procedure in the State. *O'Sullivan*, 526 U.S. at 847 (holding that the petitioner in question was required to fully and fairly present his claims to the Illinois Supreme Court in a petition for leave to file an appeal even though that court's review both of direct appeals and post-conviction petitions is discretionary).

To fairly present a claim in state court, the petitioner must include both the operative facts and the controlling legal principles on which the claim is based, and must also alert the state court that the claim raised is based on federal law. *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001); *Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004). If the federal court reviewing the habeas petition is not satisfied that the petitioner gave the state courts "a meaningful opportunity to pass upon the substance of the claims [] presented in federal court,"

the Court cannot reach the merits. *Chambers*, 264 F.3d at 737-738; see also *Sweeney*, 361 F.3d at 332.

"Where state remedies remain available to a habeas petitioner who has not fairly presented his constitutional claim(s) to the state courts, the exhaustion doctrine precludes a federal court from granting him relief on that claim: although a federal court now has the option of denying the claim on its merits, 28 U.S.C. § 2254(d)(2), it must otherwise dismiss his habeas petition without prejudice so that the petitioner may return to state court in order to litigate the claim(s)." *Perruquet*, 390 F.3d at 514 (citing *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Rose v. Lundy*, 455 U.S. 509, 522 (1982)); see also 28 U.S.C. § 2254(b)(1)(A); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Dressler v. McCaughtry*, 238 F.3d 908, 912 (7th Cir. 2001). However, where a petitioner has already pursued state court remedies and there is no longer any state corrective process available to him or her, "it is not the exhaustion doctrine that stands in the path of habeas relief, see 28 U.S.C. § 2254(b)(1)(B)(i), but rather the separate but related doctrine of procedural default." *Perruquet*, 390 F.3d at 514.

However, if an opportunity still exists for the petitioner to return to state court to exhaust his or her unexhausted claims, the petitioner has not yet procedurally defaulted those claims and the Court must consider whether to dismiss the petition without prejudice or, if appropriate, stay the case. See *Rose v. Lundy*, 455 U.S. 509 (1982); *Dolis v. Chambers*, 454 F.3d 721, 724 (7th Cir. 2006). Generally a federal district court may not adjudicate a mixed habeas petition. See U.S.C. § 2254(b)(1)(A); *Rose,* 455 U.S. at 518-19. Under the total exhaustion requirement, federal district courts are required to dismiss a mixed petition without prejudice to allow petitioners to pursue exhaustion of their claims. *Lundy*, 455 U.S. at 522. The petitioner then has the option of returning to state court to exhaust his or her claims or to resubmit his or her habeas

petition presenting only the exhausted claims. *Id.* at 510. Although dismissal without prejudice is the typical response to a mixed petition filed prior to exhausting the available state remedies, the Court may, in the interest of comity or judicial economy, deny a habeas petition on the merits. See 28 U.S.C. § 2254(b)(2); see also *Granberry v. Greer*, 481 U.S. 129, 134-135 (1987).

In limited circumstances, a court may "stay" a habeas petition to avoid limitations period problems. The enactment of the AEDPA altered the landscape of federal habeas law by imposing a one-year statute of limitations on the filing of federal petitions while preserving the total exhaustion requirement. See 28 U.S.C. § 2244(d). Under the AEDPA, the filing of a habeas petition in federal court does not toll the statute of limitations. See *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001). As a result, habeas petitioners who file mixed petitions in federal courts run the risk of losing their opportunity for any review of their unexhausted claims. *Rhines v. Weber*, 544 U.S. 269, 277 (2005). In an attempt to solve this problem, some district courts have adopted a stay and abeyance procedure. *Id.* at 275. The stay and abeyance procedure should be used in "appropriate but limited circumstances." *Dolis v. Chambers*, 454 F.3d 721, 724 (7th Cir. 2006). The Seventh Circuit has cautioned that a federal district court may only stay a mixed petition "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentional dilatory litigation tactics." *Id.* at 278.

### C.    Procedural Default

The procedural default doctrine, also grounded in principles of comity, federalism, and judicial efficiency, ordinarily precludes a federal court from reaching the merits of a habeas claim when either (1) the claim that was presented to the state courts and the state court ruling against the petitioner rests on adequate and independent state law grounds, or (2) the claim was

not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred. *Id.*; see also *Coleman*, 501 U.S. at 735; *Harris v. Reed*, 489 U.S. 255, 263 & n.9 (1989); *Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004). Thus, when a habeas petitioner has "exhausted his state court remedies without properly asserting his federal claim at each level of the state court review" – and the opportunity to raise that claim in state court has passed – the petitioner has procedurally defaulted that claim. *Lewis*, 390 F.3d at 1026. Similarly, procedural default on independent and adequate state grounds occurs where the state court explicitly invoked a state procedural bar rule as a separate basis for its decision to deny the petitioner relief, even if a state court reaches the merits of the petitioner's challenge to his or her conviction in an alternative holding. See *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Miranda v. Leibach*, 394 F.3d 984, 991 (7th Cir. 2005) ("the last state court to issue an opinion of a petitioner's federal claim has resolved that claim on an adequate and independent state ground").

Once a court has determined that a petitioner has procedurally defaulted one or more habeas claims, the default can be overcome only if the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law" or, alternatively, show that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Under the cause and prejudice test, "cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts." *Lewis*, 390 F. 2d at 1026 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Prejudice is established by showing that the violation of the petitioner's federal rights created "not merely * * * a *possibility* of prejudice, but that [it] worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional

dimensions." *Lewis*, 390 F.3d at 1026 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); see also *Lemons v. O'Sullivan*, 54 F. 3d 357, 362 (7th Cir. 1995). A federal court may grant a procedurally defaulted habeas petition even in absence of cause in extraordinary cases where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 466 U.S. at 496. In order to establish that a fundamental miscarriage of justice would result if habeas relief is denied, the petitioner must show that "no reasonable juror would have found him guilty of the crime but for the error(s) he attributes to the state court." *Lewis*, 390 F.3d at 1026 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-29 (1995)).

## III. Analysis

### A. Petitioner's Failure to Exhaust his Second and Third Habeas Claims

Petitioner failed to raise several claims now before this Court in one complete round of state court review, rendering them unexhausted. See *Lewis*, 390 F.3d at 1025. Specifically, Petitioner failed to properly exhaust his second habeas claim that he was denied effective assistance of trial counsel based on a failure to introduce exculpatory evidence regarding Carlos' bank records and his third habeas claim in which he alleges that the prosecution knowingly used perjured testimony at trial.

Although Petitioner raised his ineffective assistance of trial counsel claim relating to alleged exculpatory evidence on direct appeal, he failed to include that claim in his PLA to the Illinois Supreme Court related to that appeal, denying that court the opportunity to review it. See *O'Sullivan*, 526 U.S. at 847 (fair presentment requires that a claim be presented even before a court of discretionary review). Petitioner raised both the ineffective assistance of trial counsel based on a failure to impeach claim and the perjured testimony claim in his post-conviction petition and subsequent appeal of the dismissal of that petition, but did not pursue these claims in

his post-conviction PLA. Petitioner now argues that both claims were preserved because he attempted to raise them in his *pro se* supplemental brief on appeal from the dismissal of his post-conviction petition. While a party represented by counsel has no Sixth Amendment right to file a *pro se* brief, an appellate court, in its discretion, may accept the brief and consider its arguments. *Hayes v. Hawes*, 921 F.2d 100, 102 (7th Cir. 1990).

Petitioner notes that the Seventh Circuit has held, in an unpublished opinion, that a habeas petitioner avoided procedural default – and in fact properly raised claims for fair presentment purposes – by filing motions for leave to file instanter *pro se* supplemental briefs at each stage of his post-conviction proceedings, despite the fact that both the Illinois Appellate Court and Supreme Court denied the motions without comment. *Kizer v. Uchtman,* 165 Fed. Appx. 465, 468 (7th Cir. 2006). But even if *Kizer* applied here (setting aside, for the moment, the fact that the Seventh Circuit designated its opinion in *Kizer* as non-precedential), Petitioner cannot meet its requirements. Unlike the petitioner in *Kizer*, Petitioner did not file a motion to supplement at each appropriate stage in his own proceedings in Illinois. Rather, Petitioner *only* filed a motion to supplement in the Appellate Court; he did not attempt to file a *pro se* supplemental brief in the Supreme Court at the PLA stage, thus rendering *Kizer*'s fair presentment analysis inapplicable.

Because the claims raised in Petitioner's supplemental brief to the Appellate Court were never presented to the Illinois Supreme Court either in Petitioner's PLA or in any *pro se* supplemental briefing that was at least tendered for filing, Petitioner has not satisfied the fair presentment requirement. *O'Sullivan*, 526 U.S. at 847 (holding that the petitioner in question was required to fully and fairly present his claims to the Illinois Supreme Court in a petition for leave to file an appeal even though that court's review both of direct appeals and post-conviction

petitions is discretionary). As a consequence, Petitioner's claims of ineffective assistance of trial counsel for failure to introduce allegedly exculpatory evidence and the prosecution's use of perjured testimony remain unexhausted because Petitioner failed to raise them through one complete round of the State's appellate review process. See *Lewis*, 390 F.3d at 1025.[2]

### B. Petitioner Procedurally Defaulted Second and Third Habeas Claims Based on a Failure to Exhaust

As noted above, if a federal habeas petitioner has failed to properly present his federal claim(s) to the state courts, but there is no longer any corrective process available to him, then the petitioner has procedurally defaulted that claim. *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004). In such a circumstance, the Court need not consider the proper disposition of a "mixed petition," which applies only where the unexhausted claims may still be corrected by the state courts. The Court now considers whether any state corrective processes remain available to Petitioner under Illinois law. See *Engle v. Isaac*, 456 U.S. 107, 125 (1982) (a court is to look to state law that provides collateral relief to determine whether a petitioner's claims are procedurally defaulted). If not, Petitioner's second and third claims are procedurally defaulted absent a showing of cause and prejudice. *Lewis*, 390 F.3d at 1026.

Because Petitioner already pursued certain of his claims in one round of post-conviction proceedings, in order to return to the Illinois courts for consideration of his unexhausted claims Petitioner would be required to file a successive petition for post-conviction relief, and would be required to seek leave of court to proceed. See 725 ILCS § 5/122-1(f) ("One petition may be filed by a petitioner * * * without leave of court"). Leave of court to file a successive post-conviction petition with an additional claim or claims is granted "only if a petitioner

---

[2] The cases outside the circuit cited by Petitioner are distinguishable, in that the *pro se* petitioner either was granted leave to file or the court allowed filing without comment. See *Holloway v. Horn*, 355 F.3d 707 (3d Cir. 2004); *Reid v. Senkowski*, 961 F.2d 374 (2d Cir. 1992).

demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure." *Id.* Illinois law specifies the following regarding the cause and prejudice standard: "(1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.* Moreover, a separate provision in the Illinois Post-Conviction Act provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS § 5/122-3. The disposition of an initial post-conviction petition thus has preclusive effect with respect to all claims that *were raised or could have been raised* in that petition. See *People v. McDonald*, 365 Ill. App. 3d 390, 392-393 (3rd Dist. 2006).[3]

Petitioner might be able to overcome the preclusive effect of his original post-conviction petition proceedings in state court, given that he presented the basis of his second and third habeas claims in his *pro se* supplemental briefing. In terms of a successive petition, Petitioner would not have been, for example, raising a new constitutional claim such as ineffective assistance of appellate counsel that has arisen since his post-conviction proceedings and could be appropriately disposed of in a successive petition. Nevertheless, the Illinois courts likely would have found that Petitioner's additional claims did not meet the cause and prejudice standard given both his counsel's decision not to pursue those claims and the Illinois Appellate Court's

---

[3] Petitioner conceivably could have pursued, albeit *pro se*, filing a successive post-conviction petition in addition to his attempts to raise these arguments on appeal of the dismissal of his post-conviction petition, but did not do so.

decision in review of his post-conviction petition dismissal not to accept his *pro se* supplemental briefing.

In any event, consideration of how the Illinois courts might have treated Petitioner's unexhausted claims in a successive petition is unnecessary for this Court's review, because it is the statute of limitations that is fatal to Petitioner's ability to return to state court for further proceedings. Illinois's post-conviction act specifies that if a petition for certiorari to the United States Supreme Court is not filed on direct appeal, "no proceedings under this [statute] shall be commenced . . . more than 6 months from the date for filing a certiorari petition, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS § 5/122-1(c). Petitioner's PLA seeking review of the denial of post-conviction relief was denied in late September 2006. The deadline for seeking review in the Supreme Court of the United States thus passed in December 2006, and the six month period provided by Illinois statute lapsed in June 2007. Petitioner has not now alleged in any of his papers "facts showing that the delay" in raising new allegations with respect to these two claims "was not due to his [] culpable negligence." *Id.* Petitioner therefore is barred from further proceedings on limitations grounds in the Illinois courts.

Given that Petitioner has no recourse for further proceedings in the Illinois courts, "state corrective action" no longer exists and Petitioner procedurally defaulted both his second and third habeas claims. *Perruquet*, 390 F.3d at 513. In this instance, Petitioner has neither attempted to make a showing of cause and prejudice that might overcome his procedural defaults, nor invoked the "fundamental miscarriage of justice" exception, either in his initial or amended petition. See *Coleman*, 501 U.S. at 750; *Lewis*, 390 F.3d at 1026. The Court will not make these arguments for Petitioner. See *Todd v. Schomig*, 283 F.3d 842, 849 (7th Cir. 2002).

**C.** **Petitioner's Claim of Ineffective Assistance of Trial Counsel for Failure to Impeach is Procedurally Defaulted on Independent and Adequate State Grounds**

Petitioner contends that the Illinois Appellate Court's holding that Petitioner failed to establish that he suffered any prejudice as a result of trial counsel's failure to impeach Carlos regarding alleged inconsistencies in his testimony was based on an unreasonable determination of the facts. Pet. at 5. Respondent correctly argues that Petitioner's claim of ineffective assistance of trial counsel for failure to impeach Carlos' testimony as inconsistent is procedurally defaulted on independent and adequate state grounds. See *Leibach*, 394 F.3d at 991-92; see also *Coleman*, 501 U.S. at 729-30. The state appellate court found that Petitioner had forfeited that claim because although he raised it as part of his post-conviction appeal, he failed to raise it in his direct appeal. Any issues that could have been raised on direct appeal, but were not, are procedurally defaulted under Illinois law. *People v. Ruiz*, 132 Ill.2d 1, 9 (Ill. 1989). Petitioner was able to raise this claim on direct appeal, because all of the information necessary to impeach Carlos' testimony, including the police report, were available to him at that time. The state court went on to evaluate the claim on its merits, finding that, forfeiture aside, Petitioner would not prevail on this ineffective assistance of trial counsel claim. Here, although the state court did reach the merits of this issue, it clearly was an alternate holding, since that court initially acknowledged that the petitioner had forfeited the claim prior to the evaluation of the claim on its merits. Procedural default on independent and adequate state grounds still exists when the state court explicitly invokes a state procedural bar rule as a separate basis for the decision, even if a state court reaches the merits in an alternative holding. See *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989). Because the state court held that Petitioner had forfeited his claim of ineffective

assistance of trial counsel for failure to impeach Carlos' testimony, that claim is procedurally defaulted on independent and adequate state grounds.

### D.    Petitioner's *Apprendi* Claim and Consecutive Sentences

Petitioner fairly presented his final claim at all appropriate levels in the Illinois state court, thereby preserving the claim for decision in this Court. Petitioner's final claim is that his consecutive sentences violate *Apprendi v. New Jersey*. 530 U.S. 466 (2000). Petitioner was convicted of theft by deception and sentenced to fourteen years imprisonment to be served consecutively to a seven-year sentence that was imposed in a separate case. Petitioner argues that his consecutive sentences violate *Apprendi* because ordering the sentences to run consecutively, rather than concurrently, required the trial judge to make a finding of fact in regard to Petitioner's threat to the public's safety without presenting the issue to the jury.

In *Apprendi*, the United States Supreme Court held that, apart from the fact of a prior conviction, any facts that increase the prescribed range of penalties beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 469. Respondent argues that since no case from the Supreme Court addresses whether facts used to determine how an inmate serves multiple sentences must be submitted to a jury, the state court's application of federal law is not objectively unreasonable. Supp. Ans. at 5.

On direct appeal, the Illinois Appellate Court found Petitioner's argument to be without merit for the following reasons:

> First, pursuant to 730 5/5-5-3(c)-8 (West 1998), defendant was sentenced as a Class X offender because of his prior convictions. Prior convictions were specifically recognized by the <u>Apprendi</u> court as an exception to the general rule that "other than <u>the fact of a prior conviction</u>, any fact that increases the penalty for a crime beyond the prescribed statutory maximum just be submitted to a jury and proved beyond a reasonable doubt." (emphasis added), <u>Apprendi</u>, 530 U.S. at 490, 120 S.Ct. 2362-2363, 147 L. Ed. 2d 435, 455 (2000). As such, when defendant was sentenced as a Class X offender based on prior convictions, those

> convictions need not have been alleged in the charging document, submitted for trial or proved beyond a reasonable doubt. Lathon, 317 Ill. App. 3d at 587. Therefore, defendant's sentence is not in violation of the rule announced in Apprendi.
>
> Second, the Illinois Supreme Court had specifically exempted consecutive sentences from the rule announced in Apprendi. People v. Wagener, 196 Ill. 23d 269, 286 (2001); People v. Carney, 196 Ill. 2d 518, 531-532 (2001). "Our jurisprudence, therefore, makes it clear that consecutive sentences do not constitute a single sentence and cannot be combined as though the were one sentence for one offense. Each conviction results in a discrete sentence that must be treated individually." Carney, 196 Ill. 2d 530.

Ex. A, *People v. Clark*, No. 1-99-3366, at *14-15 (Ill. App. Ct. May 2, 2002) (Rule 23 Order). Because the Appellate Court properly identified *Apprendi* as the controlling federal law in this area, this Court's charge on habeas review is to determine whether the Illinois Appellate Court applied that law reasonably. See *Gomez v. Acevedo*, 106 F.3d 192, 199 (7th Cir. 1997). This Court finds that it did so.

Initially, the Illinois Appellate Court properly pointed out that consideration of prior convictions is explicitly exempted from the *Apprendi* rule as a general matter. The Appellate Court's also rejected Clark's claim in a manner consistent with Illinois Supreme Court and Seventh Circuit precedent holding that "because consecutive sentences remain discrete * * * sentences that are to be served consecutively cannot run afoul of *Apprendi*, which only addresses sentences for individual crimes." *People v. Wagener*, 196 Ill. 2d 269, 286 (2001); see also *United States v. Noble*, 299 F.3d 907, 909-10 (7th Cir. 2002) (holding that the imposition of consecutive sentences does not violate *Apprendi* as long as the "combined sentence does not exceed the combined maximum for the two counts").

Petitioner argues that the Illinois Appellate Court's decision not to extend *Apprendi* to his circumstances, *i.e.* the imposition of consecutive sentences when a factual determination by the jury to do so based on his prior conviction had not been made, is an unreasonable application of

clearly established federal law as determined by the Supreme Court of the United States. Petitioner does not argue that his combined sentence exceeds the combined maximum for the two counts at issue; rather he contends that his maximum sentence is unlawfully "longer." See, *e.g.,* Leave to Amend at 4. However, the Illinois Appellate Court's decision, finding that Petitioner's claim challenging his consecutive sentence is distinguishable from the issue in *Apprendi*, which only addressed a single sentence, is consistent with both the Illinois Supreme Court and the Seventh Circuit precedent cited above. Finally, and most dispositively, since the briefing in this case was completed, the Supreme Court of the United States in fact has considered, and rejected, Petitioner's argument. In *Oregon v. Ice*, 129 S. Ct. 711, 714-15 (2009), the Court rejected the contention that "the Sixth Amendment mandate[s] jury determination of any fact declared necessary to the imposition of consecutive, in lieu of concurrent, sentences." See also *King v. Adams*, 2009 WL 482165, at \*8 (N.D. Calif. Feb. 25, 2009) ("Under *Ice*, a trial judge may impose consecutive sentences based on findings made by the judge without running afoul of the *Apprendi* line of cases").

## IV.    Conclusion

Petitioner procedurally defaulted his claims of ineffective assistance of counsel based on a failure to introduce exculpatory evidence and of the prosecution knowing use of perjured testimony because Petitioner failed to exhaust those claims in the Illinois courts and state corrective action is no longer available. Petitioner's claim of ineffective assistance of counsel based on a failure to impeach a witness with inconsistent testimony also is procedurally defaulted on independent and adequate state law grounds, because that claim was not raised until Petitioner's post-conviction petition, even though the basis for the claim was known at the time of Petitioner's direct appeal. Finally, Petitioner's challenge to his consecutive sentences is now

squarely foreclosed by Supreme Court precedent.  For all of these reasons, Petitioner's request

for habeas relief [1, 23] is respectfully denied.

Dated: March 30, 2009

_____

Robert M. Dow, Jr.
United States District Judge